CASTLE *v.* WATTS.

4-6710                                    160 S. W. 2d 886

Opinion delivered April 13, 1942.

*W. F. Reeves,* for appellant.

*Shouse & Shouse,* for appellee.

SMITH, J.   Appellee C. C. Watts filed a suit against C. E. Castle, which he denominated a "Petition to Quiet Title." The pleading did not contain allegations entitling plaintiff or petitioner to the relief prayed. The defendant, Castle, did not demur to this pleading, but filed an answer, averring that the pleading did not state facts

entitling the petitioner to the relief prayed or to any relief. A cross-complaint was filed by Castle, in which he prayed the cancellation of certain conveyances hereinafter referred to. Castle alleged that he had acquired title to the land in question under a decree foreclosing a mortgage executed to him by John I. Barnes. It does not appear what title Barnes had. The deed of the commissioner, based upon this foreclosure, was dated September 22, 1930.

An intervention was filed by W. T. Mills, which presents for decision the question decisive of this litigation.

Upon these pleadings testimony was heard, from which it appeared that, after obtaining the deed of the commissioner of the court upon the foreclosure of the mortgage above mentioned, Castle abandoned the land; but, if this be not true, he failed to pay the general taxes due thereon for the year 1932. The land was sold to the state. There were three parcels of the land, described as follows: Pt. NE¼ SW¼ section 3, T. 14 N., R. 15 W., 6.50 acres; Pt. SE¼ NW¼ section 3, T. 14 N., R. 15 W., 24 acres; Pt. NE¼ SW¼ section 3, T. 14 N., R. 15 W., 18 acres. The land was sold and certified to the state under these descriptions, and was purchased by and conveyed to T. F. Baxter by the State Land Commissioner under these descriptions.

A prospective purchaser sought Mills' assistance in acquiring the title to this land. This prospective purchaser abandoned his efforts to buy the land, but there began a voluminous correspondence between Mills and Castle which eventuated in a contract whereby Mills agreed to perfect the title to the land for one-half thereof, or for one-half of the proceeds of the land, if it were sold.

In the performance of this contract, Mills procured a quitclaim deed from O. M. Young and wife to himself to the land. What, if any, interest Young had in the land does not appear. In the further attempt to perform the contract, Mills filed suit against Baxter to cancel the deed that Baxter had obtained from the State Land Commissioner, but that litigation was compromised by the

execution to Mills of a quitclaim deed by Baxter to the land here in suit.

Mills and Castle corresponded about the sale of the land, more than one sale having been under consideration. Mills alleged in his intervention, and the court found the fact to be, that, with the consent of Castle, Mills sold the land to Watts for the consideration of $400, of which $100 was cash in hand paid, the balance of $300 to be paid in three equal installments of $100 each. The court found that in clearing the title to the land of the cloud of this tax sale Mills had paid $5 advance costs; that he had paid Baxter the sum of $54, and that he had paid taxes subsequently accruing amounting to $4.81.

In anticipation that the contract of sale to Watts would be performed, Mills and wife, on December 17, 1938, executed and delivered to Watts a warranty deed which correctly described the land in question by metes and bounds, and this litigation was begun by the filing of the "Petition to Quiet Title" by Watts referred to in the beginning of this opinion.

Mills alleged that he prepared for execution by Castle a quitclaim deed under date of November 15, 1938, by which Castle would convey to Mills the land in controversy, but Castle declined to execute the deed. Mills also alleged the tender to Castle of the proportion of the purchase money to which Castle was entitled under the contract whereby he had removed the cloud of the tax title and had negotiated the sale of the land.

The case is unusual, and the decree is not unambiguous; but as we understand and interpret it the court found, from the testimony and the correspondence between Mills and Castle, that Mills had acquired an agency coupled with an interest to sell the land, and had negotiated a sale pursuant to this authority, and had tendered to Castle the $200 to which, under the contract, Castle was entitled.

The parties were operating under what Mills calls a "50-50" contract, under which he was to sell the land after removing the cloud and pay Castle 50 per cent. of

the proceeds of the sale, so that Castle is entitled to $200 net, and this, as we understand the record, Mills had offered to pay Castle.

Upon this finding it was decreed "that title to the hereinbefore lands be quieted and confirmed in the plaintiff, C. C. Watts, upon his completing payment according to this decree; that tender has been made C. E. Castle by the intervener, Wm. T. Mills, and upon the defendant's (Castle's) failure to execute proper deed then his right, title and interest in said lands be and the same are canceled and barred." In other words, specific performance of the contract between Castle and Mills was decreed.

Authority for this decree is found in the opinion in the recent case of *Sebold* v. *Williamson*, 203 Ark. 741, 158 S. W. 2d 667, delivered February 9, 1942. In that case, as in this, the landowner authorized his agent to sell land under specified terms, and the agent procured a purchaser who accepted the terms, and the specific performance of the contract to sell was enforced in that case. The correspondence and writings between the parties prescribing the terms of sale met the requirements of the Statute of Frauds here, just as was the case there.

It is insisted that Castle did not authorize Mills to sell the land for $400, and that he should not be required to accept that price for the reason that the land is worth more money, and that Mills did not disclose its actual value, as he should have done, inasmuch as Castle had never seen the land. The chancellor did not so find; nor do we. The record discloses that Mills reported to Castle an offer to buy the land at the price of $100, which Castle agreed to accept provided he was paid $75 of the purchase money. Mills did not make this sale, but later sold the land for $400 to Watts who offers to perform and to complete his payment, one-half of which has already been made.

In the Sebold case, *supra,* after decreeing specific performance of the contract which Sebold's agent had negotiated, it was ordered that if Sebold did not convey, the clerk of the court be appointed commissioner to make

the conveyance and receive compensation for Sebold, the owner.

We think this a better practice than to cancel the owner's title, as was done in the decree here appealed from, and that decree will be modified to impose the same directions given in the Sebold case. The cause is remanded for that purpose.

If it be said that the record does not show that Castle is the owner of the land, it being shown only that he had a deed from the commissioner made pursuant to the decree foreclosing the mortgage from Barnes to Castle, and that no showing is made that Barnes had title to the land, it may be answered that the purchaser Mills procured proposes to accept Castle's title, whatever it may be, and the deed sent to Castle by Mills for execution, and which Mills, by his intervention, prays that Castle be required to execute, was a quitclaim deed. Castle may yet perform the decree by executing the deed. If he fails or refuses to do so, the commissioner will execute a deed, as directed in the Sebold case, upon the payment to the commissioner of $200 for the account of Castle.

The costs will be assessed against Castle, and if he refuses to execute the quitclaim deed which Mills presented to him for execution, the additional costs incident to the execution of the commissioner's deed will also be assessed against him.